# Exhibit A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MUHAMED DIEYE,<br>Defendant. | Case No. 1:26-MJ-00127-MMH-1<br><br>Brooklyn, New York<br>June 24, 2026<br>5:19 p.m. |

TRANSCRIPT OF INITIAL APPEARANCE AND ARRAIGNMENT HEARING
BEFORE THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Amanda Muros-Bishoff, Esq.<br>U.S. Attorney's Office<br>271-A Cadman Plaza East<br>Brooklyn, NY 11201 |
| For the Defendant: | Michael D. Weil, Esq.<br>Federal Defenders of New York<br>One Pierrepont Plaza<br>16th Floor<br>Ste 16th Floor<br>Brooklyn, NY 11201 |
| Also Appearing: | Mr. Tebullah, Pre-trial Svcs |
| Clerk: | DW |
| Court Recorder: | Electronic Sound Recording |
| Transcription Service: | Chris Hwang<br>Abba Reporting<br>PO Box 223282<br>Chantilly, Virginia 20153<br>(518) 302-6772 |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Call to order at 5:19 p.m.)

THE CLERK: We have a criminal cause for arraignment on the removal complaint to the Northern District of Texas, 26-MJ-127, United States v. Muhamed Dieye.

Counsel starting with the Government, please state your appearances for the record?

MS. MUROS-BISHOFF: Good afternoon, Assistant U.S. Attorney Amanda Muros-Bishoff for the Government and with me at counsel table is legal intern Kayla Eisenman (phonetic).

THE COURT: Good afternoon.

MR. WEIL: Good afternoon, Your Honor, Federal defenders by Michael Weil.

THE COURT: Good afternoon to you and good afternoon to you is it Mr. Dieye -- can you pronounce your client's last name please?

THE DEFENDANT: Good afternoon, it's Dieye [DI/EE].

THE COURT: Dieye [DI/EE], thank you sir.

THE DEFENDANT: Yeah.

THE COURT: You can remain seated, sir. And just be sure to speak into the microphone. Thank you.

THE DEFENDANT: Yes.

THE COURT: Okay, sir, you are here and the purpose of -- well, the purpose of this proceeding is to advise you of your rights, to inform you of the charge against you, and to decide whether you'll be released on bond with conditions or

whether you'll be removed in custody to the Northern District of Texas for prosecution on the charges.

Is Deputy Marshal Tebullah (phonetic) -- yes, he is here. Can you please raise your right hand and tell me if you solemnly swear to or affirm the truthfulness of your statements contained in your removal complaint captioned United States of America against Muhamed -- is it Dieye, that caption?

MR. TEBULLAH: Yes, Your Honor.

THE COURT: Okay, thank you. You can be seated. I've reviewed the removal complaint and I'm now approving it by signing it.

I'm sorry, can you repeat the Defendant's last name one more time so I can write it phonetically?

THE DEFENDANT: Dieye.

THE COURT: Dieye.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Thank you. Okay, Mr. Dieye.

THE DEFENDANT: Yes, ma'am.

THE COURT: You have the right to remain silent. If you've already made a statement, you don't have to make any others. If you start to say something, you can stop at any time, but any statements that you make except statements you make privately to your attorney can be used against you.

You also have the right to be represented by an attorney during all court proceedings including this one and

during all questioning by the authorities.

Mr. Weil, I don't have a financial affidavit.

MR. WEIL: So, Your Honor, I have on occasion, Defendant would have been permitted to appear for -- in a limited fashion in cases because they want to do -- a person wants to be arraigned that day, hasn't had an opportunity to investigate whether they can retain counsel or know what that costs.

He indicated that his finances were a little complicated by the fact that he is involved in some businesses that own property in Africa and how much was -- is the partnership. And he indicated it was extremely complicated.

So, in the rush of today, I didn't have the opportunity to do a financial affidavit. I would ask permission to appear today, which would not carry over to any proceeding in Texas.

And if this proceeding extends beyond today, I will submit a financial affidavit at the following proceeding as well. That's my request.

THE COURT: Ms. Muros-Bishoff, any objection to appointing Mr. Weil for the purposes of today's proceeding?

MS. MUROS-BISHOFF: Not at this time, Your Honor.

THE COURT: Okay. So Mr. Dieye?

THE DEFENDANT: Yes, ma'am.

THE COURT: I am appointing Mr. Weil to appoint you

solely for this proceeding right now and for today. The reason for this is because Mr. Weil is an attorney with The Federal Defenders of New York. And those attorneys are typically appointed for those who are unable to afford counsel.

Because it is your constitutional right to have counsel, if you are unable to pay for it, I can't allow this proceeding to continue without you having appointed counsel.

That said, if at any point, you determine that you continue to need appointed counsel, then you are going to have to complete a financial affidavit to assess your eligibility for such counsel.

You also can retain counsel if you would like, but you don't have to respond. I just have to tell you your rights, but ultimately, Mr. Weil's appointment is for right now, because I typically would have to rely on a financial affidavit to do that and I don't have one.

Again, if at any point, you are unable to afford counsel, he -- his appointment can remain in place at least for any proceedings in this district because in the Northern District of Texas, there would be different counsel appointed for you there. Do you understand that? Do you understand that? Do you understand?

THE DEFENDANT: Yes.

THE COURT: Okay, that's all we need to do.

THE DEFENDANT: Yes.

THE COURT: Sir, I'm trying to limit your statements because they can be used against you. I just need to make sure you heard and understand your rights. You told me yes, I'm going to move on to the next right that you have, which is to know what you're charged with.

And the charge in this case, which is part of the removal complaint, includes a criminal complaint and a copy of a warrant from the Northern District of Texas.

And it charges you with willfully and knowingly making a false statement in a passport application.

Mr. Weil, have you received a copy of the removal documents?

MR. WEIL: Yes, Your Honor.

THE COURT: Okay, and are you satisfied that your client understands what he's charged with?

MR. WEIL: I am, Your Honor.

THE COURT: Okay. Now Mr. Dieye?

THE DEFENDANT: Yes, ma'am.

THE COURT: Because you are charged by complaint, you have the right to a preliminary hearing as to whether there's probable cause to believe that you committed the crime that you're charged with from the Northern District of Texas.

That would be a hearing at which evidence would be presented by the Government. Your attorney could also object to that evidence. You also have the right to have this

preliminary hearing happen in the Northern District of Texas.

You can also give up your right to have that hearing. If you give up your right to do so, you're not admitting your guilt. Do you understand that?

THE DEFENDANT: No.

THE COURT: Then I want you to talk with your attorney for a second.

(Counsel confers with the Defendant)

THE COURT: Okay, so I've now been given a form Mr. Dieye, relating to your position about a preliminary hearing. It indicates that you would like to waive your right to a preliminary hearing.

It also indicates that you would like to waive or give up your right to an identity hearing. An identity hearing is your right because you were arrested in a -- you're arrested here on a charge from another district.

It would be a hearing to establish that you are the person that is named in the complaint that was issued from the Northern District of Texas. And you also have the right to give up your right to have such a hearing.

And if you do so, you're not admitting any guilt. Do you understand both your right to an identity hearing and the right to a preliminary hearing?

THE DEFENDANT: Yes, ma'am.

THE COURT: Okay. And Mr. Weil, is this your

client's signature on this first line?

MR. WEIL: Yes, Your Honor.

THE COURT: And is he -- is this your signature underneath, Mr. Weil?

MR. WEIL: Yes, Your Honor.

THE COURT: Okay. Then based on the information that has been presented to me, I find that Mr. Dieye is knowingly and voluntarily waiving his right to an identity hearing and the preliminary hearing.

The other right that you have, Mr. Dieye, is that because you were arrested here in this district based on a charge from the Northern District of Texas, you have the right to plead guilty to those charges here in this district.

In order to do that, two things have to happen. One, you have to say in writing if that's what you would like to do.

And second, both the United States Attorney from this district and the Northern District of Texas have to agree that you can do so. This is not a decision that you have to make today. I just have to tell you that this is one of your rights. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Is consular notification an issue in this case?

MS. MUROS-BISHOFF: It is not. The Defendant is a dual citizen of the United States and Senegal, but the agent's

offered the Defendant consular notification and he declined it.

THE COURT: Okay, because you are a citizen of another country in addition to a citizen of the United States, I will give you this advisory in an abundance of caution.

As a non-U.S. citizen, you can request that a government attorney or a federal law enforcement official notifies a consular officer from your country of origin that you've been arrested.

However, in some cases, a treaty or some other international agreement may require the U.S. Government to give that notice whether you request it or not.

The Government is advising me that Senegal is an optional notification, meaning if you say you -- well, actually, right, they don't have to do the notification. So if you say you don't want to it, it wouldn't happen.

So, Mr. Weil, is your client foregoing notification?

THE DEFENDANT: No.

MR. WEIL: Yes, he does not need them to notify the consular, Your Honor. So again, says yes, foregoing notification.

THE COURT: Okay, right, meaning you don't want them to be notified? Okay.

THE DEFENDANT: Yes, that's correct.

THE COURT: Okay. Understood. Thank you.

Is victim notification an issue here?

MS. MUROS-BISHOFF: No, it's not, Your Honor.

THE COURT: Okay. Mr. Dieye, I'm now going to direct counsel for the Government regarding its obligations with respect to discovery and evidence in your case.

Ms. Muros-Bishoff, under Federal Rule of Criminal Procedure 5(f), I direct the Prosecution to comply with its obligation under Brady v. Maryland and its progeny.

That obligation is to disclose to the Defense all information, whether admissible or not, that is favorable to the Defendant, material either to guilt or to punishment, and known to the prosecution.

Possible consequences for noncompliance may include the following. Dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I'll be entering a written order more fully describing this obligation and the possible consequences of failing to meet it.

I direct the Prosecution to review and comply with that order. Does the Prosecution confirm that it understands its obligations and will fulfill them?

MS. MUROS-BISHOFF: Yes, Your Honor.

THE COURT: Thank you.

Okay, what is the Government's position with respect to detention?

MS. MUROS-BISHOFF: Your Honor, the Government is seeking detention based on a high risk of flight.

THE COURT: Mr. Weil?

MR. WEIL: Your Honor, we don't believe there's any basis to seek detention in this case. The Defendant -- what is alleged in the complaint is extremely unusual, Your Honor, if you read the underlying complaint from Texas.

The Defendant is a U.S. citizen, saw the passport it appears on two occasions using his own name and (indiscernible) provision where he's supposed to allegedly list other names used.

Assuming Mr. Dieye -- is it?

THE COURT: Dieye.

MR. WEIL: Had wrongly used someone's identity at some point in 2022, the notion that it -- that he is supposed to repeat that in a passport application in response to the blank and just continually put down someone else's Social Security number if it was wrongly used or someone else's name that was wrongly used on another occasion and is compelled to basically serially commit an offense seems extremely strange, Your Honor.

So there's a plain issue as to whether any of this was willful, whether there was any intent to mislead the Department of State on that passport application, which was otherwise entirely truthful. There's nothing alleged that

wasn't truthful.

I know Mr. Dieye has some other -- has some other criminal history. It's very notable, Your Honor, that there is not -- even though he's had other encounters with the law, most of them appear to have been relatively minor and not resulted in serious convictions, does not have warrant on his record. He has never missed Court.

He was arrested. Again, the removal complaint says he was arrested at the United States District Court for the Eastern District of New York. That's not where he was arrested obviously. He was arrested at JFK Airport traveling with his wife and his two, 20-month-old children, twins --

(Counsel confers with the Defendant)

MR. WEIL: -- going to Singapore. He has family in Philadelphia. He resides in Philadelphia. That was confirmed by Pre-trial Services.

I haven't been able to get someone here today. There -- Philadelphia's a couple hours away. And we believe that the Government's seeking detention or even seeking to require him to provide suretors or to have a detention hearing on this charge, some sort of proffer as to why he represents a risk of flight, given the nature of the charge would be appropriate.

THE COURT: It would be helpful to understand the Government's position with respect to what factors in the

records support an argument of serious risk of flight.

I note that Mr. Dieye's criminal history spans a couple of jurisdictions, including Pennsylvania Texas, yeah, Pennsylvania and Texas, but it's a little unclear to me what if anything else supports the Government's request for detention on flight risk.

MS. MUROS-BISHOFF: Yes, Your Honor. The Defendant was stopped at JFK Airport. He had purchased a one-way ticket to Malaysia. He's a dual citizen with the country of Senegal and --

THE COURT: Then why does the complaint say that he was arrested at the U.S. District Court for the Eastern District of New York? Was he arrested at the airport or was he arrested here?

MS. MUROS-BISHOFF: Well, I think the arrest happened here. He was detained at the airport.

THE COURT: I see, okay.

MS. MUROS-BISHOFF: And --

THE COURT: Well, I guess that's a legal question, but as a factual matter, if he was detained at the airport, based on an arrest warrant that was issued in another district, pretty sure he was arrested at the airport, but that's probably a legal question that he'll have to contest later.

MS. MUROS-BISHOFF: Okay.

THE COURT: But the record indicates that he bought a

one-way ticket to a country outside of the United States.

MS. MUROS-BISHOFF: In addition, Your Honor, the Defendant is the subject of a major government investigation into a nationwide bank fraud scheme that involves identity theft, impersonation of other people, and the use of counterfeit identifications.

And at the time that he was stopped, the Government had information based on law enforcement surveillance that he had vacated the home that he was in in Dallas, Texas, shipped his belongings overseas, and had purchased a one-way ticket to Malaysia.

At the airport, he swiped his boarding pass before he was detained. And the Government had previously seized his 2022 passport. He then got a 2024 passport. The passport card based on a 2024 passport was also seized by the Government.

The Government was not aware that he had the actual passport that was issued in 2024, but that's what he had in his possession when he was trying to leave the country.

THE COURT: The 2022 passport is what he had in his possession?

MS. MUROS-BISHOFF: The 2024 passport.

THE COURT: 2024, excuse me. Okay.

MS. MUROS-BISHOFF: And in addition, he has an extensive criminal history. The address that was provided to Pre-trial Services is not a known address based on the

information the Government has.

And in addition, his wife is believed either be a citizen of the United Kingdom or about to become a citizen of the United Kingdom.

So given that they vacated the home that they were living in in Dallas and his employment is listed as involving buying and selling of land in Senegal and then some other joint venture with an Australian investor. So there are really very little to no ties in terms of employment and residence in the United States.

In addition, he does have contacts as Your Honor mentioned in Texas and Pennsylvania and an extensive criminal history. And the Government believes that he has access to significant funds in the form of crypto.

THE COURT: Okay, thank you.

Mr. Weil?

MR. WEIL: May I have a moment, Your Honor, because obviously this is all --

THE COURT: Absolutely.

(Counsel confers with the Defendant)

MR. WEIL: Your Honor, we -- I'm sorry.

THE COURT: Hold on, we need to put the mikes. Are the mikes on?

THE CLERK: Yes, Judge.

THE COURT: Okay, go ahead.

MR. WEIL: Your Honor, I found -- I think the Government's proffer is just extremely vague as to what might present a risk of flight here.

The Defendant has lived in Pennsylvania where the Court can see he lived from his arrest at age 17 and 19. At age 21, he was living in Pennsylvania when he was young. He went to Temple University is what he told Pre-trial Services. And then, at some point, he moved to Texas and he lived in Texas. So he has ties to two American states, Your Honor. Pennsylvania and Texas.

He did leave his address in Texas. They were having some financial issues and decided to move to Philadelphia to move back in with his family temporarily with an eye to getting a new place.

He has not shipped his entire life to some other country. He indicated that his wife sent some belongings to Kenya, which is where he is -- she is from, Your Honor. And she has applied for U.K. citizenship. No.

THE DEFENDANT: She was born.

MR. WEIL: She was born in the U.K. But having a wife who is not American born living in multiple states are not indicia of a risk of flight. I --

THE COURT: I'm a little concerned about this one-way ticket to Malaysia, which I don't think it is a country that extradites.

MR. WEIL: Right, well, I don't -- he indicated that the family -- he and his wife indicated were going on a trip. They were going to multiple countries. And they -- and because they were not -- it was not a round-trip ticket, they decided to buy their return ticket after they -- from that other country once they did the trip, Your Honor.

THE COURT: Yeah, I guess my concern here is, Mr. Weil, is that given the underlying offenses for making a false statement in a passport.

And I hear your argument from earlier about this need to continue to use prior names. I -- in context, though, this is concerning about the one-way ticket, the vacature of the home. And I hear you, that it is not maybe necessarily on their own indicia, but when you put them together, it becomes a problem.

Let's put it this way. I wouldn't be prepared to release Mr. Dieye without a surety, because I don't -- I am concerned about this flight risk. I think that the Government has really significant issues with respect to the fact that he's about to go abroad to a nonextradited -- nonextraditing country where he has dual citizenship with another country. His wife also has, again, by themselves, they might not be a problem, but combined, it looks like flight and a strong risk of it.

Sir, you don't have to say anything. Mr. Weil's

going to speak for you.

THE DEFENDANT: Yeah.

THE COURT: So I mean, at this point, I would definitely not release him ROR.

MR. WEIL: Okay.

THE COURT: There's no question about that. And I would need a surety, which is consistent with Pre-trial Services' recommendation, based on his criminal history, based on the Government's proffer of what he was doing at the time of his detention/arrest, and just the fact that you're right, he has been in multiple jurisdictions, but he's been committing criminals in multiple jurisdictions.

So, all for all of those reasons, I think this is a bailable case. I just think that there needs to be a surety. There absolutely has to be.

MR. WEIL: All right.

THE COURT: So, without one, I'm going to order him detained.

MR. WEIL: Understood, Your Honor. Can I just and since we are (indiscernible), I'm just going to ask sometimes in these cases, particularly where the Government's relying on things outside the complaint or Pre-trial Services' records, as the Court is aware, they simply in a memo, laying it all out with clarity. And I don't feel I have that. And I'm not asking them to do that, Your Honor.

I would like to understand the passport -- I didn't under -- I could not follow what was alleged to have been done with the passports and the use of 2022 or 2024 passport. The Government said a passport was seized. It's my understanding he provide -- he gave one to the Court as a condition of his bail in another case, which is done in this district all the time.

So I don't know if the allegation is that he used a seized passport or that he used the passport card from the passport that had been seized. I just did not follow it. So I'm asking for clarification on that.

THE COURT: I mean, you can, but I think the underlying charge here is clear, which is that Mr. Dieye presented a New York -- a New Jersey license that had his name and someone else's identification -- identifying information.

Ms. Muros-Bishoff, if you have additional information, I want to re-explain the passport situation. That's not really the -- my decision wasn't hinged on that.

MR. WEIL: No, no, but --

THE COURT: But if you'd like to understand it more, Ms. Muros-Bishoff?

MR. WEIL: It's the Court's use of the passport. No, I don't mean -- the underlying charge, omitting that New Jersey thing from his passport application. I'm trying to understand what the Government said about his use of the passport on this

specific trip when he was arrested, if there was something nefarious.

THE COURT: To replace where he was brought a one-way ticket in a place that doesn't extradite U.S. citizens. Okay. Ms. Muros-Bishoff?

MS. MUROS-BISHOFF: Yes, Your Honor. What I stated earlier is that after his 2022 passport was seized, he applied again for a passport, got the 2024 passport, and the -- along with a passport card.

And in 2024, he was issued the passport, the passport card. The Government also seized the 2024 passport card.

THE COURT: But the 2024 passport is the one that he was using when he was encountered at JFK?

MS. MUROS-BISHOFF: Yes.

MR. WEIL: And I guess I'm not understanding the seizure of the -- what that means when this passport was seized unless it's -- I don't --

THE COURT: I don't know either.

MR. WEIL: Okay.

THE COURT: But ultimately, I'm seizing on the fact that he was trying to leave the country --

MR. WEIL: Okay.

THE COURT: -- on a one-way ticket to a country that doesn't extradite U.S. citizens with his wife, who is not a U.S. citizen. And along with the other indicia that he was

intending to vacate, that is the risk that I'm concerned about --

MR. WEIL: Okay.

THE COURT: -- that I believe is not appropriately mitigated by allowing him to walk out of the door right now without some other person being held to a bond to ensure that he returns to Court.

This is different in kind. I think that his prior criminal arrests and I think that there's a real risk here. So --

MR. WEIL: Understand.

THE COURT: -- for the reasons stated, based on the statutory factors that I have to consider, I do think that the lack of sureties is a problem, that would be the least restrictive condition since it's not being met now and there's nothing proposed and I'm going to detain on that basis.

Of course, you are more than welcome to come back to the Court and present a package. However, we have to also resolve the issue of your representation.

MR. WEIL: Yeah, so I would request, Your Honor, that rather than issue the detain remove in custody, the Court issue just a temporary order of detention. We put this off for a detention hearing with the understanding that I can't present what I presented today of course.

THE COURT: Well, I thought that the detention

hearing wasn't going to be waived and that we were having a detention hearing, so --

MR. WEIL: Well, Your Honor, I think what I asked was if the Government's seeking detention that some sort of proffer as to why he would represent a risk of flight.

THE COURT: They just made the proffer.

MR. WEIL: So and the Court's ruled we need a suretor. And I'd like to come back tomorrow with a suretor and a financial affidavit. That's what I'm requesting.

THE COURT: Ms. Muros-Bishoff?

MS. MUROS-BISHOFF: Your Honor, I just note that in the pre-trial report, it indicates that --

THE COURT: That there are several family members and you were told not to come to Court, but that they'd be willing to be sureties. So --

MS. MUROS-BISHOFF: But none of them have on the books employment and may not qualify. So I don't --

THE COURT: Fair. Again, it needs to be a financial responsible surety.

MR. WEIL: Understood, Your Honor.

THE COURT: Mr. Weil. Does Pre-trial Services want to be otherwise heard or you are resting on the report?

MR. TEBULLAH: Resting on the recommendation in the report, Your Honor.

THE COURT: Okay. So, I mean, look, we just had a

hearing which I thought was not being waived. I'm going to enter an order of detention. If you want to come back tomorrow, you can or any other date.

It is unclear because this is a complaint, it's unclear whether or not there would be even be a court date for Mr. Dieye in the Northern District of Texas, correct?

MS. MUROS-BISHOFF: Correct. I'd have to speak to my counterpart there.

THE COURT: Right. So I do not even know when he would be leaving this district, although hopefully he's not --

MR. WEIL: Your Honor, just asking that the Court not issue the order committing him to the Northern -- to the District of Texas until tomorrow.

THE COURT: Well, he needs to be held.

MR. WEIL: Understood.

THE COURT: I have to enter an order.

MR. WEIL: Of detention. I understand, but there's the -- I'm asking the Court not to issue the commitment to another district.

THE COURT: You want to continue this to another day?

MR. WEIL: Okay.

THE COURT: Okay, we'll continue this to another day. Okay, so tomorrow?

MR. WEIL: That's fine, Your Honor.

THE COURT: Okay.

MS. MUROS-BISHOFF: So can I just clarify? Are we -- is the removal complaint still pending for tomorrow?

THE COURT: Meaning --

MS. MUROS-BISHOFF: Not clear on what counsel was asking for for tomorrow?

THE COURT: In other words, he's asking for me to enter an order scheduling a continuation of the detention hearing as opposed to entering the final order committing Mr. Dieye to be transmitted in custody to the Northern District of Texas.

So if we're coming back tomorrow, I will enter the order scheduling this for tomorrow. We'll come back tomorrow. And again, you can try to present more information or a package or something. Otherwise then, yes, I'd be signing the order.

MR. WEIL: Understood.

THE COURT: But you have to resolve your representation issue as well.

MS. MUROS-BISHOFF: Can I -- I just need to put an objection on the record to the detention hearing being continued to tomorrow because the Defendant informed his family members not to come to Court.

He's, you know, he -- he's been in custody most of the day. He had the opportunity to present that information to the Court today and he chose to waive that.

THE COURT: Fair enough. Objection overruled. We're

coming back tomorrow. So at 2 o'clock or 11?

MR. WEIL: Your Honor, given that -- given the financial affidavit and other issues, and that they seem to be in the Pennsylvania area, I'd ask for 2 o'clock.

THE COURT: Okay. Tomorrow at 2. And again, this is a continuation of the hearing, but if I don't have satisfactory information or evidence that this risk can be mitigated, then I'm just going to enter the order committing Mr. Dieye to be transported in custody.

MR. WEIL: Understood, Your Honor.

THE COURT: Okay, so we'll -- we can resolve it then, Ms. Muros-Bishoff --

MS. MUROS-BISHOFF: Okay.

THE COURT: -- with the Government's objections noted.

MS. MUROS-BISHOFF: Thank you, Your Honor.

THE COURT: Okay. Now hang on, is there anything else before we adjourn? Any medical or other issues that need to be addressed, Mr. Weil?

MR. WEIL: No, Your Honor.

THE COURT: Ms. Muros-Bishoff, anything from the Government?

MS. MUROS-BISHOFF: Nothing at this time, thank you.

THE COURT: Okay. Thank you very much, everyone. We are adjourned.

THE CLERK: Thank you.

(Proceedings concluded at 5:57 p.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Chris Hwang
___________________ June 26, 2026

Chris Hwang Date

Court Reporter